[No. C051775. Third Dist. Feb. 15, 2007.]

WILLIAM R. DUALE et al., Plaintiffs and Appellants, v.
MERCEDES-BENZ USA, LLC, Defendant and Appellant.

## COUNSEL

Law Office of Michael Scott Humphries and Michael Scott Humphries for Plaintiffs and Appellants.

Universal, Shannon & Wheeler and Jon D. Universal for Defendant and Appellant.

## OPINION

**CANTIL-SAKAUYE, J.**—Defendant Mercedes-Benz USA, LLC (Mercedes-Benz), appeals an award of $40,497.50 in attorney fees and costs to plaintiffs William R. and Margaret G. Duale as the prevailing parties on their cause of action for violation of the Song-Beverly Consumer Warranty Act (Song-Beverly Act; Civ. Code, § 1790 et seq.), popularly known as the automobile "lemon law."[1]

In its appeal, Mercedes-Benz contends the attorney fee and cost award to plaintiffs is improper because plaintiffs' jury verdict of $49,885 did not exceed defendant's statutory offer to compromise (Code Civ. Proc., § 998). Plaintiffs cross-appeal, contending the court erred in denying them prejudgment interest on the jury award. (Civ. Code, § 3287.)

---

[1] The Song-Beverly Act " 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclosure of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties' " and " 'give[s] recourse to the buyer of a new automobile that suffers from the same defect repeatedly, or is out of service for cumulative repairs for an extended period. [Citations.]' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989–990 [73 Cal.Rptr.2d 682, 953 P.2d 858].)

We find merit in Mercedes-Benz's appeal, and no merit in the Duales' appeal. We shall reverse and remand for further proceedings.

## BACKGROUND

As far as we can discern them, these are the facts.[2] Plaintiffs purchased a Mercedes-Benz automobile in March 2002 for $50,750.

In June 2003, plaintiffs sued Mercedes-Benz USA, Inc., and Mercedes-Benz of Sacramento, seeking rescission, contract "revocation" and damages and penalties under the Song-Beverly Act (Civ. Code, § 1790 et seq.). They alleged that Mercedes-Benz USA, Inc., failed to adequately service and repair the car "after a reasonable number of attempts for the following complaint(s): the dome lamp will not go off when the door is closed, rattle from the suspension when making a left hand turn or u-turn, rear muffler makes improper noises, the driver's seat switch is broken, loud knocking noise heard from under the car over rough roads when making a u-turn, loud thump noise heard when sitting at a stop light, creaking noises heard from the hard top when driving, rear hat shelf rattles over rough roads, clunk from the rear of the car on decel—as if someone hit you from the rear, rubbing noise heard from the left front of the vehicle at times while turning, vehicle lost power while driving on the freeway, vehicle bucks and misfires, clunk from the rear of the car at stops, engine stalls at times and there is a clunk noise after driving long periods and coming to a stop."

Plaintiffs sought return of the sum paid for the car, plus interest from the date of purchase, treble damages (Civ. Code, § 1794), attorney fees (Civ. Code, §§ 1794, 1717) and costs.

Defendant served plaintiffs with a statutory offer to compromise (Code Civ. Proc., § 998) (section 998), in which it offered to take back the car in exchange for $51,466, plus "plaintiffs' reasonably incurred attorney's fees and all court costs incurred to date to be determined by the court" if the parties could not agree. Plaintiffs did not accept the settlement offer; they did not dispute the settlement amount, but wished to "be allowed to bring a motion for pre-judgment interest on that amount."

The case proceeded to trial. Although no transcript of the trial proceedings is in the appellate record, the trial court later characterized the proceedings this way: "At the conclusion of the trial, the jury awarded plaintiff[s] $49,885.00 in damages based on a finding that 'the rear thump' was a nonconformity covered by the warranty that substantially impaired the use,

---

[2] There is no reporter's transcript of the five-day jury trial in the record.

value or safety of the vehicle. The jury also found that the mileage of the vehicle was 4,348 miles when the nonconformity was brought in for repair.

"While the jury found that the [Mercedes Benz] failed to repair and then promptly repurchase the vehicle, they did not find that the [Mercedes Benz] willfully failed to repurchase the vehicle and did not assess a penalty against the defendant[]. The total award of $49,885.00 reflects the purchase price of the vehicle less the mileage use, as calculated under the Song-Beverly Act."

After trial, plaintiffs sought an award of costs—including all of their attorney fees of $57,753—under the Song-Beverly Act. By separate motion, plaintiffs also sought prejudgment interest of $17,459.75, calculated on the judgment amount from the date they bought the car (Civ. Code, § 3287).

Defendant filed its own cost bill, but did not seek attorney fees. Defendant also opposed plaintiffs' application for attorney fees on the ground its section 998 offer should operate to deny plaintiffs *postoffer* fees and costs.

The court granted plaintiffs' request for attorney fees in part. The court reasoned that defendant's section 998 "offer does not effect [*sic*] the attorneys' fees allowable in this case [because] CCP § 998 is a 'general' statute effecting [*sic*] <u>costs</u> allowed in cases where a party either achieves or fails to achieve a better result at trial . . . [while] [t]he Song-Beverly Act is a 'specific' statute allowing costs, <u>including attorneys' fees</u>, for prosecuting cases such as the case at bar." However, the court rejected some individual attorney fee items as not "necessary to the prosecution of this case," reduced other items, and ultimately awarded plaintiffs $40,497.50 in attorney fees.

The court granted both plaintiffs' and defendant's requests for costs, awarding plaintiffs costs of $2,947.31 (without regard to whether they were incurred before or after defendant's § 998 offer) and awarding defendant postoffer costs of $2,163.82.

The court denied plaintiffs' request for prejudgment interest, reasoning in its tentative ruling that "the amount of damages was not certain, nor could it be made certain, until the jury determined whether the[re] was a nonconformity, whether it impaired the use, value or safety of the vehicle, and the mileage at which the nonconformity was presented for repair. All of these issues were contested at the trial of this matter." At the hearing, the court noted that, in light of expert testimony presented by the defense, the only defect found by the jury did not affect the car's "safety, et cetera . . . . And so that was a disputed issue. And the mileage for the offset was disputed until such time as the jury rendered its verdicts."

## DISCUSSION

### I

Mercedes-Benz contends the court erred in awarding plaintiffs attorney fees and costs incurred after they rejected defendant's offer to compromise under section 998. We agree. The trial court erred in concluding that defendant's section 998 "offer does not effect [*sic*] the attorneys' fees allowable in this case."

On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569].)

■ " 'The right to recover costs exists solely by virtue of statute.' [Citations.]" (*Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th at p. 989.) Code of Civil Procedure "[s]ection 1032 is the fundamental authority for awarding costs in civil actions. It establishes the general rule that '[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.' " (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1108 [86 Cal.Rptr.2d 614, 979 P.2d 974].) Code of Civil Procedure section 1033.5 "specifies the 'items . . . allowable as costs under Section 1032.' " (*Scott Co. v. Blount, Inc, supra*, at p. 1108.) Costs include "Attorney fees, when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." (Code Civ. Proc., § 1033.5, subd. (a)(10).)

Here, the applicable attorney fee "statute" that triggers application of Code of Civil Procedure sections 1032 and 1033.5 is Civil Code section 1794, subdivision (d), which states: "If the buyer prevails in an action under this section [Song-Beverly Act], the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." We agree that plaintiffs prevailed within the meaning of Civil Code section 1794, subdivision (d) and Code of Civil Procedure section 1032.

However, defendant made a pretrial settlement offer under section 998. That section provides in pertinent part: "(c)(1) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (§ 998, subd. (c)(1).)

█ The purpose of section 998 is to " 'encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)' " (*Scott Co. v. Blount, Inc., supra,* 20 Cal.4th at p. 1116; see *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 139 [45 Cal.Rptr.3d 760, 137 P.3d 939].) Section 998 thus represents "a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers." (*Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439 [77 Cal.Rptr.2d 459].)

Here, defendant offered to compromise the case for $51,466, plus "plaintiffs' reasonably incurred attorney's fees and all court costs incurred to date to be determined by the court." The jury awarded only $49,885, and judgment was entered in that amount. It is undisputed that plaintiffs thus "fail[ed] to obtain a more favorable judgment or award" after rejecting defendant's pretrial settlement offer.[3] (§ 998, subd. (c)(1).)

---

[3] "In determining whether the plaintiff obtains a more favorable judgment, the court . . . shall exclude the *postoffer* costs." (§ 998, subd. (c)(2)(A), italics added.) "The rationale for this rule is that allowing the addition of postoffer costs would defeat the purpose of [section 998, subdivision (c)] . . . and enable the plaintiff to increase the amount of the 'judgment' simply by driving up postoffer costs." (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 90, p. 492.) It is well settled, however, that "to determine whether the plaintiff obtained a judgment more favorable than defendant's offer, preoffer costs [including statutory attorney fees] are added to the award of damages." (*Stallman v. Bell* (1991) 235 Cal.App.3d 740, 748 [286 Cal.Rptr. 755]; *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 392 [85 Cal.Rptr.2d 4]; *Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 575 [61 Cal.Rptr.2d 790]; *Heritage Engineering Construction, Inc. v. City of Industry, supra,* 65 Cal.App.4th at p. 1441.) The trial court did not make any apparent effort to add reasonable preoffer attorney fees and

■ The California Supreme Court has explained, in careful "step by step" detail, how section 998 operates in this scenario. (*Scott Co. v. Blount, Inc., supra*, 20 Cal.4th at p. 1108.) The language of section 998 "on its face" prevents a plaintiff who rejects a settlement offer that is greater than the recovery it ultimately obtains at trial from recovering "postoffer" costs and attorney fees. (See 20 Cal.4th at p. 1111, fn. 1.) Such a plaintiff may only "recover its preoffer costs to which it would otherwise be entitled, including preoffer attorney fees in cases like this one . . . ." (*Id.* at p. 1112.)

In contrast, the defendant in such a case may recover those costs incurred *after* the settlement offer to which a prevailing party would be entitled under Code of Civil Procedure section 1032. (*Scott Co. v. Blount, Inc., supra*, 20 Cal.4th at p. 1113.)[4]

Applying the statutory language, the trial court here got it half right. Awarding defendants their *post*offer costs was correct; awarding plaintiffs both their *pre-* and *post*offer attorney fees and costs was not.

In awarding plaintiffs their preoffer attorney fees and costs, the court reasoned that the "specific" provisions of the Song-Beverly Act—which permit prevailing buyers to recover attorney fees and costs in an action of this type—effectively "trumps" the more "general provisions" of section 998.

■ This was error. The state Supreme Court has held that, even though the cost-shifting feature of the Song-Beverly Act is the more specific statute because it concerns the recovery of costs in a more specific type of litigation, it does not trump or supersede the provisions of section 998 when, as here, the two may be reconciled. (*Murillo v. Fleetwood Enterprises, Inc., supra*, 17 Cal.4th at p. 992.)

---

costs to the jury award before deciding whether plaintiffs had obtained a more favorable judgment; in fact, it mistakenly opined that "CCP § 998(c)(2)(B) excludes attorneys' fees as a 'cost' under that section" when only *postoffer* fees are excluded as costs.

However, we review the result, not the court's reasoning. Defendant's section 998 offer was comprised of both (1) a cash award of approximately $51,500; and (2) "reasonably incurred" attorney fees and costs. As the court was authorized to award only "reasonably incurred" attorney fees and costs (Civ. Code, § 1794, subd. (d)), the fees and costs portion is effectively a wash. The cash portion of defendant's offer was larger than plaintiffs' jury award of approximately $49,900; the court did not err in concluding plaintiffs "fail[ed] to obtain a more favorable judgment or award." (Code Civ. Proc., § 998, subd. (c)(1).)

[4] Generally, by operation of Code of Civil Procedure section 1033.5, attorney fees are a category of cost allowable under Code of Civil Procedure section 1032 to which such a defendant would be entitled. (See *Scott Co. v. Blount, Inc., supra*, 20 Cal.4th at p. 1113.) Here, however, because defendant made no claim in the trial court to postoffer attorney fees in its memorandum of costs, it has been forfeited.

In *Murillo*, buyers of a new motor home sued the sellers alleging violations of the Song-Beverly Act. Then, as now, the act included a cost-shifting statute entitling the prevailing buyer the right to recover "costs and expenses, including attorney's fees," but was silent regarding the right of prevailing sellers to recover their costs and fees. (Civ. Code, § 1794, subd. (d).) The trial court entered judgment on the jury's verdict in favor of the sellers and awarded the sellers their costs as the prevailing parties under Code of Civil Procedure section 1032, subdivision (b). Because the buyers had rejected the sellers' settlement offer, the trial court exercised its discretion to award the sellers their expert witness fees under section 998. The trial court denied the buyers' request to strike or tax the sellers' costs on the ground the general cost provisions conflicted with the more specific cost provision applicable to actions under the act. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at pp. 988–989.)

The court affirmed. It found "no conflict or inconsistency between Civil Code section 1794 [Song-Beverly Act] and Code of Civil Procedure section 1032" because "[o]n the one hand, if a buyer should prevail in an action under the Act, he or she is entitled to costs, expenses, and attorney fees as set forth in Civil Code section 1794(d). On the other hand, if a seller should prevail in an action brought under the Act, it is entitled to costs under section 1032(b)." (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 992.)

The *Murillo* court similarly found the cost and fee provision in the Song-Beverly Act did not preclude operation of section 998's provision permitting a defendant/seller to recover expert witness fees as costs when the buyer failed to obtain a more favorable judgment than the offer he had rejected, because the Song-Beverly Act "provides no exception to the provisions of section 998." (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 1000; see *Pilimai v. Farmers Ins. Exchange Co., supra,* 39 Cal.4th at p. 143 [reiterating that *Murillo* rejected notion that § 998 was "impliedly overridden" by Song-Beverly Act].)

Admittedly, *Murillo* did not consider the situation posed here, i.e., when a seller who does not prevail at trial claims entitlement to section 998 costs and fees. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 1000, fn. 5.) But it found the Song-Beverly Act's purpose—providing protection to consumers following vehicle purchases (*Murillo v. Fleetwood Enterprises, Inc., supra,* at p. 990) by, among other things, "provid[ing] injured consumers

strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible" (*id.* at p. 994)—was not inconsistent with other statutory provisions allowing the successful seller/litigant to recover attorney fees and expert witness fees allowed under (among other statutes) section 998.

■ We see no reason not to extend the Supreme Court's reasoning in *Murillo* to include the circumstances posed here. Nothing in the relevant statutes or applicable case law suggests the Legislature intended to exempt lemon law plaintiffs from the "carrot and stick" of section 998's provisions encouraging settlement of pending cases. (*Scott v. Blount, Inc., supra,* 20 Cal.4th at p. 1116.) Nor is the Song-Beverly Act's purpose inconsistent with the application of the section 998 provision restricting the ability of prevailing plaintiffs to recover attorney fees and costs if they fail to recover more at trial than a rejected pretrial settlement offer. The act allows prevailing injured car buyers to recover attorney fees and costs in order to render such lawsuits "economically feasible" (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 994); but declining to award such a buyer postoffer attorney fees and costs if he has refused a reasonable pretrial settlement offer does not defeat that purpose. An injured plaintiff may be encouraged to sue by the prospect of recovering his costs if successful, but no articulated public policy is served by allowing him to maintain a lawsuit that loses its economic viability by virtue of the seller's willingness to settle on terms better than those a jury will award.

The trial court's refusal to apply section 998 in this case to limit plaintiffs to recovery of their preoffer fees and costs was error.

## II

Plaintiffs assert in their cross-appeal that the trial court erred in denying their posttrial application for prejudgment interest on the jury award. There was no error.

■ Civil Code section 3287 reads in relevant part: " '(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . .' In other words, prejudgment interest is awarded only when the sum is liquidated within the meaning of the statute." (*Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1172 [286 Cal.Rptr. 146].)

" 'Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage.' [Citations.]" (*Fireman's Fund Ins. Co. v. Allstate Ins. Co., supra*, 234 Cal.App.3d at p. 1173.) Thus, " ' "[t]he test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether *defendant* actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. [Citation.]" [Citations.] "The statute . . . does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and it is not ascertainable from truthful data supplied by the claimant to his debtor.' [Citations.]" [Citation.] Thus, *where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate.* [Citation.]' [Citation.]" (*Children's Hosp. v. Bonta* (2002) 97 Cal.App.4th 740, 774 [118 Cal.Rptr.2d 629], italics added; see *Fireman's Fund Ins. Co. v. Allstate Ins. Co., supra*, 234 Cal.App.3d at p. 1173.)

Applying these principles, the trial court did not err in determining the amount of damages owed plaintiffs by defendant was not calculable prior to trial. Determination of the award required the jury to determine (1) whether any of the many defects alleged in the complaint represented a nonconformity, (2) whether any such nonconformity "substantially impaired [the] use, value, or safety" of the vehicle, and (3) then to determine—for any such nonconformity—the mileage at which plaintiffs first presented the car to defendant for repair. (See Civ. Code, §§ 1793.2, subd. (d)(2)(C), 1794, subd. (b).) The trial court found that "[a]ll of these issues were contested at the trial" and, further, even as to the single nonconformity found by the jury, whether it substantially impaired the car's use, value or safety and the mileage at which it was first presented to defendant for repair were both in dispute at trial. Thus, the amount of damages could not be resolved except by verdict, and prejudgment interest was not appropriate.

## DISPOSITION

The court's order allowing plaintiffs attorney fees and costs is reversed, and the cause remanded with instructions to consider plaintiffs' memorandum of costs in a manner consistent with this opinion. Otherwise, the judgment is affirmed. Mercedes-Benz shall recover costs on appeal. (Cal. Rules of Court, rule 8.276(a)(3).)

Sims, Acting P. J., and Butz, J., concurred.

On March 15, 2007, the opinion was modified to read as printed above. The petition of plaintiffs and appellants for review by the Supreme Court was denied June 20, 2007, S150891.