Filed 5/4/26  Wilson v. Realtor CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EVANGELINA WILSON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DON FRANKLIN REALTOR et al., <br><br> Defendants and Respondents. | G064677 <br><br> (Super. Ct. No. 30-2021-01184533) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

Singleton Schreiber, Benjamin I. Siminou; The Simon Law Group, Travis E. Davis and Edwin Hong for Plaintiffs and Appellants.

Collinson │Greco and Tracy L. Hughes for Defendants and Respondents.

Plaintiff Evangelina Wilson appeals from the judgment entered after the trial court granted the motion for summary judgment filed by defendants Don Franklin Realtor, Donald Franklin, and Brett Franklin (the Franklin defendants). For the reasons we explain, we affirm.

## UNDISPUTED FACTS

In November 2020, William Ross lived in an apartment complex in Santa Ana (the property) with his son, his son's fiancée, and two companion dogs. Don Franklin Realtor, the property manager for the property, hired Ross to serve as the property's onsite manager. In exchange, Ross was not required to pay rent or utilities and was paid a monthly stipend.

As the onsite manager, Ross's duties included collecting rent checks, removing graffiti, and fielding general maintenance calls from tenants living at the property. He was essentially on call and available to tend to tenants' needs and perform minor tasks and repairs at the property.

Ross had medical issues that required weekly blood draws. On November 23, 2020, Wilson, then working as a traveling phlebotomist, went to the property to perform a blood draw for Ross "for his health and wellbeing." When Ross opened the front door to receive Wilson, the dogs ran out and bit her.

Prior to this incident, Ross's dogs had never bitten or otherwise attacked anyone, although Wilson had noticed the dogs barking during her one prior visit to the property. The Franklin defendants did not know about the dogs prior to the incident.

## PROCEDURAL HISTORY

Wilson initiated this action and, in April 2021, filed a first amended complaint asserting claims for strict liability, negligence, and

2

premises liability against Ross along with the alleged owners of the property, Alfredo Zarate as an individual and as trustee of the Zarate Family Trust dated July 29, 2009 (the Trust).

Ross died on November 17, 2021. In October 2022, Wilson dismissed her action against Ross with prejudice.

In November 2022, Zarate and the Trust filed a motion for summary judgment. In February 2023, the trial court granted Zarate and the Trust's motion for summary judgment.[1]

Also in February 2023, Wilson filed amendments to her operative pleading, naming the Franklin defendants as Doe defendants two through four. In June 2023, Wilson filed her second amended complaint asserting claims for negligence and premises liability against the Franklin defendants, who at that point were the only defendants remaining in the case.

In April 2024, the Franklin defendants filed the instant motion for summary judgment and/or summary adjudication. The motion was brought on the grounds Wilson could not establish liability against the Franklin defendants, and her claims were barred under Code of Civil Procedure section 474 for unreasonable delay in naming the Franklin defendants. Wilson filed an opposition to the motion. The Franklin defendants filed evidentiary objections to some of the evidence Wilson submitted in support of her opposition.

In July 2024, the trial court ruled on the Franklin defendants' evidentiary objections and granted the motion for summary judgment on the ground the undisputed facts show the Franklin defendants were neither

---

[1] Zarate passed away on December 13, 2023.

3

directly nor vicariously liable in negligence to Wilson.[2] Wilson does not challenge the trial court's rulings on the Franklin defendants' evidentiary objections. Although in her opposition Wilson requested a continuance of the motion for summary judgment to enable her to conduct additional discovery, she did not argue in her opening brief the trial court erred by denying that request.[3]

Judgment was entered in the Franklin defendants' favor. Wilson timely appealed.[4]

---

[2] In November 2022, Wilson's husband initiated a separate but related action for loss of consortium against Zarate, as an individual and as trustee of the Trust. Like Wilson, Wilson's husband amended his pleading to name the Franklin defendants as Doe defendants. The Franklin defendants' motion for summary judgment also challenged Wilson's husband's loss of consortium claim. The trial court granted the motion with respect to the loss of consortium claim and entered judgment in the Franklin defendants' favor and against Wilson's husband. While Wilson's husband is named as an appellant in the notice of appeal, he does not challenge the judgment against him in any respect. We therefore do not address his action further.

[3] With respect to her request for a continuance, for the first time in her reply brief, Wilson argues "to the extent this Court finds [her] evidence lacking, the trial court's refusal constituted error." It is well established ""'[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.'"" (*Ione Valley Land, Air, & Water Defense Alliance, LLC v. County of Amador* (2019) 33 Cal.App.5th 165, 173.) Because Wilson raised this argument for the first time in her reply brief and has not offered any good reason for her failure to present it in her opening brief, we will not consider it and deem it forfeited.

[4] According to the respondents' brief, during the pendency of this appeal, Donald Franklin passed away on January 5, 2025.

DISCUSSION

I.

STANDARD OF REVIEW

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. [Citation.] . . . 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

II.

NO TRIABLE ISSUE EXISTS THE FRANKLIN DEFENDANTS OWED WILSON A DUTY

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citations.] Premises liability "'is grounded in the possession of the premises and the attendant right to control and manage the premises"'; accordingly, "'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.'" [Citations.] But the duty arising from possession

5

and control of property is adherence to the same standard of care that applies in negligence cases." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

In granting the motion for summary judgment, the trial court cited *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 514, in which the appellate court, with respect to premises liability, explained: "It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* knowledge and not mere constructive knowledge is required."

The appellate court further explained: "[A] landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Uccello v. Laudenslayer, supra*, 44 Cal.App.3d at p. 514; see *Fraser v. Farvid* (2024) 99 Cal.App.5th 760, 769 ["to establish a landlord's liability, the plaintiff must present either direct evidence the landlord actually knew about the dog's dangerousness or circumstantial evidence that the landlord must have known"].) The appellate court in *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1378–1379 (*Chee*) affirmed an order granting summary judgment in favor of a property manager based on these principles, holding the manager owed no duty of care to an injured tenant absent actual knowledge of the dangerous propensities of the dog.

Here, Wilson asserted a claim for premises liability against the Franklin defendants in their capacity as property manager for the property.

In support of their motion for summary judgment, the Franklin defendants produced evidence they were not aware of the existence of the Ross family's dogs at the property, much less that any such dogs had dangerous propensities. This evidence shifted the burden to Wilson to submit admissible evidence for the purpose of creating a triable issue of fact as to the Franklin defendants' awareness of the dogs and their dangerous propensities. She did not do so. Instead, in her responsive separate statement, she admitted the Franklin defendants' evidence on this point is undisputed.

In her opening brief, Wilson argues because Ross was the Franklin defendants' onsite property manager, his knowledge of the dangerousness of the dogs is imputed to the Franklin defendants as a matter of law. But there is no evidence of the dogs' dangerousness. To the contrary, it is undisputed the dogs had never bitten or otherwise attacked anyone before the November 23, 2020 incident. It is also undisputed the dogs were companion dogs. Wilson did not produce any evidence in opposition to the motion that Ross was aware the dogs had any dangerous propensities.

In the absence of evidence sufficient to create a triable issue of fact the Franklin defendants had actual knowledge the Ross family kept dangerous dogs at the property, the Franklin defendants owed no duty to Wilson to protect her from such dogs. (See *Chee, supra*, 143 Cal.App.4th at pp. 1378–1379.) Summary judgment, therefore, was properly granted to the extent Wilson sought to hold the Franklin defendants directly liable for negligence in the form of premises liability.

### III.

### VICARIOUS LIABILITY

In her opening brief, Wilson argues that even "[i]f [the Franklin] [d]efendants are not directly liable for their negligent failure to remove Ross

7

or his dogs, [they] are at least vicariously liable for Ross's negligence in harboring or handling them under the 'nondelegable-duty rule.'" Under the doctrine of respondeat superior, an employer may be held vicariously liable for the torts of his employees committed within the scope of their employment. (*Presbyterian Camp & Conference Centers, Inc.* v. *Superior Court* (2021) 12 Cal.5th 493, 502.)

Wilson's argument requires that we assume Ross was negligent with respect to his dogs biting Wilson. Assuming for the purpose of argument Ross had been negligent in some way, the problem with Wilson's argument is there is no evidence Ross was acting within the course and scope of his employment with the Franklin defendants at the time of that incident. Instead, the undisputed facts show that at the time Wilson was attacked, Ross had just opened his front door to her to come and draw his blood "for his health and wellbeing." There is no evidence he was simultaneously performing any onsite management duties or that he was supposed to be engaging in conduct as part of his employment at that time.

We reject Wilson's suggestion a triable issue of material fact exists as to the Franklin defendants' vicarious liability to her in light of evidence Ross was essentially on duty 24 hours, seven days a week in his role as onsite property manager. The trial court sustained the Franklin defendants' evidentiary objection to the admission of Ross's son's deposition which is the only evidence that Ross was expected to be on duty at all hours, every day of the week. Wilson has not challenged the ruling on appeal. Therefore, Wilson has failed to produce admissible evidence of that fact.

In any event, as stated by a panel of this court in *Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1609: "Public policy would be ill-served by a rule establishing 24-hour employer liability for on-call employees, regardless of

the nature of the employee's activities at the time of an accident. Respondeat superior is imposed for three policy reasons: '(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury.' [Citation.] None of these goals would be legitimately accomplished by a rule establishing automatic 24-hour employer liability for 24-hour on-call employees."

In *Le Elder v. Rice, supra,* 21 Cal.App.4th at page 1610, the appellate court further explained: "[O]n-call accessibility or availability of an employee does not transform his or her private activity into company business. The first question must always focus on scope of employment. Where the injury-producing activity is beyond that scope, no totality of other circumstances will result in respondeat superior liability."

Here, as was the case in *Le Elder v. Rice*, the undisputed facts show that notwithstanding the fact Ross might have been expected to be available to respond to a tenant at any time, he was not acting within the scope of his employment when he opened the door to Wilson to have his blood drawn and his dogs ran out and bit her. Consequently, no triable issues exist as to the vicarious liability of the Franklin defendants for any negligence of Ross resulting in the dog bite incident.

Finally, "[t]he doctrine of nondelegable duty upon which plaintiff also relies is simply a form of vicarious liability. [Citation.] This doctrine recognizes that the duty owed by a landowner "'to persons who come on his property as well as to persons off the property for injuries due to the landowner's lack of due care in the management of his property . . . [g]enerally . . . is nondelegable."' [Citations.] The doctrine of nondelegable duty does not, however, *create* a duty where none would

9

otherwise exist." (*Chee, supra,* 143 Cal.App.4th at p. 1375.) For the reasons discussed *ante*, the Franklin defendants did not owe Wilson a duty in the first instance because they had no knowledge of the existence of a dog with dangerous propensities on the property and Ross was not working in the course and scope of his employment at the time of the incident.

DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

MOTOIKE, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.